(No. 58203.—)

ROBERT G. BULLARD, Indiv. and as Adm'r, *et al.*, Appellants, v. BRUCE E. BARNES *et al.*, Appellees.

*Opinion filed June 29, 1984—Rehearing denied September 28, 1984.*

508

CLARK, J., specially concurring.

Roger B. Gomien and Paul E. Root, of Gomien, Root & Masching, of Morris, and Randell S. Morgan, of Kinate & Morgan, of Fairbury, for appellants.

Patrick J. Phillips, William D. Snapp, Jeffrey P. Chicoine, and J. David Farren, of Jenner & Block, of Chicago, and Kenneth L. Strong, of Thompson, Strong & Blakeman, Ltd., of Pontiac, for appellees.

George M. Elsener, Robert J. Glenn, and Robert Drummond, all of Chicago, for amicus curiae Illinois Trial Lawyers Association.

JUSTICE UNDERWOOD delivered the opinion of the court:

Robert G. Bullard, as administrator of the estate of his deceased son, Scott Bullard, and Robert and Sharon Bullard, in their individual capacities as Scott's parents, filed an action in Livingston County circuit court seeking

recovery against Bruce Barnes and Livingston County Ready-Mix, Inc., under the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, pars. 1 through 2.2), the Survival Act (Ill. Rev. Stat. 1979, ch. 110½, par. 27—6), and for funeral expenses for which parents are liable under section 15 of "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1979, ch. 40, par. 1015; hereinafter referred to as the Family Expense Act). The complaint also sought punitive as well as compensatory damages for injury to property, a recovery for the emotional distress the parents suffered due to the death of their son, and damages for negligent entrustment.

The cause of action arose out of a motor vehicle accident that occurred shortly before 8 a.m. on October 1, 1979, in which 17-year-old Scott Bullard was fatally injured. Sometime between 7:30 and 8 a.m., Scott was driving south on a paved, two-lane road, known in Livingston County as the Katydid Road, in order to get to his part-time cooperative education job in Cornell. Northbound defendant Bruce Barnes, who was driving a semitrailer truck for his employer and codefendant, Livingston County Ready-Mix, Inc., despite fog and poor visibility, moved into the southbound lane and proceeded to pass two vehicles. He passed the vehicle directly in front of him, a stationwagon driven by Robert Graves, and then continued traveling in the southbound lane past a truck loaded with road-building materials driven by Harold Bohm. Bohm and Graves both testified that the approaching Bullard car swerved onto the west shoulder of the road to avoid a collision with the Ready-Mix truck. Graves further noted that Scott appeared to lose control of his car when he suddenly swung back on the road to avoid hitting a culvert. The Bullard car then crossed the road in front of the truck Bohm was driving, and the front of the Bohm truck struck the passenger side of the Bullard car.

Both Bohm and Graves stopped at the accident scene, although Barnes did not. Bohm went up to the Bullard car, where decedent was lying on his right side on the seat, and asked him whether he was "okay." Scott did not respond, except to shake his shoulders. Graves went to the home of a nearby relative to phone the police. Sharon Bullard, Scott's mother, and her youngest son, Todd, came upon the scene on their way to school shortly after 8 a.m. Mrs. Bullard spoke to Scott, and observed that he was rubbing his left shoulder although he did not respond. While Mrs. Bullard did not notice it at the time, her oldest son, who arrived later, observed that Scott's neck was swollen and that blood was dripping from his mouth. Later, upon retrieving Scott's personal effects from the car, he found teeth on the car floor, which were apparently knocked out by the force of the collision. By approximately 8:15 a.m., Eldon Finkenbinder, a Livingston County deputy sheriff, had arrived. Finkenbinder took decedent's pulse and determined that he was still alive, although unconscious. Approximately 10 minutes after Finkenbinder's arrival, an ambulance came and Scott was taken to a Pontiac hospital, where he died that morning, apparently without regaining consciousness.

Those portions of the complaint seeking recovery for emotional distress were dismissed for failure to state a claim upon which relief could be granted, and the propriety of that action is not in issue here. During *voir dire* proceedings, defendants admitted liability under both the wilful and wanton and the negligence counts which sought recovery under the Wrongful Death Act, the Survival Act, and the Family Expense Act. The trial court then held the claim for negligent entrustment barred since defendant had admitted liability under a *respondeat superior* theory. The court also granted defendant's motion to sever the property-damage claim, in which

plaintiff sought both punitive and compensatory damages, from all other counts.

Defendants admitted liability for $3,236.10 under the Family Expense Act, so that, in the first portion of the bifurcated trial, the jury considered only the damages to be awarded on the wrongful death and survival claims. In instructing the jurors that they could consider loss of the son's society in determining what weight to give the presumption that the parents suffered a pecuniary loss upon his death, the trial court improvised somewhat on a pattern jury instruction (Illinois Pattern Jury Instruction (IPI), Civil, No. 31.01. (2d ed. 1971)). The jury was instructed:

> "In determining pecuniary loss to the parents and the weight to be given to the presumption of pecuniary loss to the parents, you may consider what benefits of pecuniary value, including money, goods and services the decedent might have reasonably been expected to contribute to his parents and brothers had the decedent lived, bearing in mind what you find the evidence shows concerning the decedent's age, sex, health, physical and mental characteristics, habits *and the parents' loss of society with the decedent.*" (Added material emphasized.)

The verdicts were $285,000 in the wrongful death action and $40,000 in the survival action. In the second part of the trial, the parties stipulated to compensatory property damages of $750 and the jury returned a verdict of $500 in punitive property damages against defendant Barnes only. Judgments were entered accordingly.

Defendants appealed to the appellate court on a variety of grounds, and plaintiffs cross-appealed, arguing that the trial court erred in dismissing the claims for emotional distress. The appellate court reversed and remanded for a new trial on damages under the survival and wrongful death claims and affirmed the property-damage judgments, as well as the trial court's dismissal

of plaintiff's emotional-distress counts. 112 Ill. App. 3d 384.

The appellate court held that the jurors had been improperly instructed that they could consider the parents' loss of their son's society as an element of the presumption prevailing under the Wrongful Death Act that the parents suffered a pecuniary loss due to his death. The appellate court's reversal was also predicated on the admission of the following evidence which it deemed irrelevant: testimony concerning defendant Barnes' passing maneuver and his failure to stop after the collision between the Bohm and Bullard vehicles, and the admission of two morgue photographs of the decedent. That court also determined that certain jury instructions could have misled the jury into thinking that plaintiff could recover for decedent's *unconscious* pain and suffering. Its opinion commented on other alleged trial errors but found them to be harmless.

Section 2 of our Wrongful Death Act governs all recoveries under the Act, and it provides in relevant part:

"[I]n every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the *pecuniary injuries* resulting from such death, to the surviving spouse and next of kin of such deceased person." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 70, par. 2.

Of the 23 jurisdictions with statutes or decisional law limiting wrongful death recoveries to pecuniary loss, 14 now allow parental recovery in a wrongful death action for the loss of society of a child. See *Krouse v. Graham* (1977), 19 Cal. 3d 59, 68, 562 P.2d 1022, 1025, 137 Cal. Rptr. 863, 866, citing *Bond v. United Railroads* (1911), 159 Cal. 270, 286, 113 P. 366, 372 (interpreting a judicially imposed standard); *Volk v. Baldazo* (1982), 103 Idaho 570, 573, 651 P.2d 11, 14 (interpreting a judicially imposed standard); *Wardlow v. City of Keokuk* (Iowa

1971), 190 N.W.2d 439, 448 (interpreting a judicially imposed standard; Iowa Code Ann. Rules of Civil Procedure, Rule 8, was subsequently amended to expressly permit a recovery for loss of a child's society); *Smith v. City of Detroit* (1972), 388 Mich. 637, 649, 202 N.W.2d 300, 303 (overruling *Breckon v. Franklin Fuel Co.* (1970), 383 Mich. 251, 174 N.W.2d 836, and reinstating *Wycko v. Gnodtke* (1960), 361 Mich. 331, 105 N.W.2d 118, which had interpreted the Michigan statute; after *Breckon*, the Michigan legislature amended Mich. Comp. Laws Ann. sec. 600.2922, which explicitly authorizes recovery for loss of society in all wrongful death actions); *Fussner v. Andert* (1961), 261 Minn. 347, 359, 113 N.W.2d 355, 363 (interpreting Minn. Stat. sec. 573.02); *Sanders v. Mount Haggin Livestock Co.* (1972), 160 Mont. 73, 89-90, 500 P.2d 397, 406 (interpreting a judicially imposed standard); *Selders v. Armentrout* (1973), 190 Neb. 275, 279-80, 207 N.W.2d 686, 689 (interpreting a judicially imposed standard); *Green v. Bittner* (1980), 85 N.J. 1, 4, 424 A.2d 210, 211 (interpreting N.J. Stat. Ann. sec. 2A:31—5); *American R.R. Co. v. Santiago* (1st Cir. 1926), 9 F.2d 753, 758 (interpreting a judicially imposed standard; law of Puerto Rico); *Sanchez v. Schindler* (Texas 1983), 651 S.W.2d 249, 251 (revising a judicially imposed standard); *Jones v. Carvell* (Utah 1982), 641 P.2d 105, 110 n.3 (interpreting a judicially imposed standard); *Anderson v. Lale* (1974), 88 S.D. 111, 115-22, 216 N.W.2d 152, 155-58 (interpreting S.D. Codified Laws Ann. sec. 21—5—7); *Williams v. Dowling* (3d Cir. 1963), 318 F.2d 642, 644 (interpreting a judicially imposed standard; Virgin Islands law); *Lockhart v. Besel* (1967), 71 Wash. 2d 112, 117, 426 P.2d 605, 609 (interpreting a judicially imposed standard; six days after this opinion was announced, the Washington governor signed into law an amendment to Washington Revised Code Annotated section 4.24.010, which specifically allows paren-

tal recovery for loss of a child's society).

In Illinois, too, the trend in our more recent decisions under the Wrongful Death Act has been to expand the scope of pecuniary injury to encompass nonmonetary losses. In *Elliott v. Willis* (1982), 92 Ill. 2d 530, this court quite recently unanimously held, based on a broad definition of pecuniary injury, that a widowed spouse had the right to recover damages for loss of consortium under the Wrongful Death Act. We there relied upon *Hall v. Gillins* (1958), 13 Ill. 2d 26, where the court refused to allow a common law action to recover for "destruction of the family unit" caused by the death of the father because an adequate remedy already existed under the Wrongful Death Act. This court there stated:

> "The term 'pecuniary injuries' [found in section 2 of the Wrongful Death Act] has received an interpretation that is broad enough to include most of the items of damage that are claimed by plaintiffs in this case. Each plaintiff alleges deprivation of support *as well as deprivation of the companionship, guidance, advice, love and affection of the deceased.*" (Emphasis added.) 13 Ill. 2d 26, 31.

To the same effect is *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 82-83.

In *Elliott*, we also criticized the appellate court decision in *Kaiserman v. Bright* (1978), 61 Ill. App. 3d 67, 68, for citing *Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, in support of its dismissal of a count in a wrongful death action seeking recovery for loss of society of a child. We stated that *Zostautas* could not be read as a refusal to broaden the phrase "pecuniary losses" to include recovery for loss of society. In *Zostautas*, the court held that damages for mental anguish were not recoverable in a wrongful death action. As we noted in *Elliott* (92 Ill. 2d 530, 539), such a recovery is distinguishable from damages for loss of society, and neither our holding in *Elliott* nor our holding here

authorizes recovery for mental anguish as an element of loss of society. See *Wardlow v. City of Keokuk* (Iowa 1971), 190 N.W.2d 439, 448; *Anderson v. Lale* (1974), 88 S.D. 111, 122, 216 N.W.2d 152, 158; *Lockhart v. Besel* (1967), 71 Wash. 2d 112, 117, 426 P.2d 605, 609.

Defendant urges that we await further indication from the General Assembly as to whether its intent was or is to permit parents to recover for loss of their children's society in a wrongful death action. We have concluded, however, in view of our earlier decisions indicating similar recoveries would have been allowed in cases involving loss of a parent (*Hall*) and spouse (*Elliott, Knierim*), that it would be anomalous to now deny parents this form of recovery.

Our consideration of this question has provided us with an opportunity to thoroughly review a closely connected issue—the presumption of pecuniary loss as it is applied in actions to recover for the wrongful death of children. The legal basis for this presumption is traceable to an era far removed in time and values from the 1980's. The Illinois Wrongful Death Act, first enacted in 1853 (Ill. Ann. Stat., ch. 70, par. 1, Historical Note, at 330 (Smith-Hurd 1959)), was patterned after what is commonly referred to as Lord Campbell's Act (Fatal Accidents Act, 1846, 9 & 10 Vict. c. 93). (*Hall v. Gillins* (1958), 13 Ill. 2d 26, 29.) Although the British statute did not contain a pecuniary-loss limitation (Fatal Accidents Act, 9 & 10 Vict. c. 93, sec. 2), as the Illinois act does, early cases interpreting the British act established the narrow rule that parents could recover only for actual loss of the child's income (see *Blake v. Midland Ry. Co.* (1852), 18 Q.B. 93, 118 Eng. Rep. 35; *Bramall v. Lees*, 29 L.T. (O.S.) 111; *Duckworth v. Johnson* (1859), 4 H. & N. 653 (157 Eng. Rep. 997)), and it was this common law rule that drafters of the Illinois act incorporated. Such a rule accurately reflected the social conditions of the nine-

teenth century, when children were valued largely for their capacity to contribute to the family income. *Wycko v. Gnodtke* (1960), 361 Mich. 331, 333-40, 105 N.W.2d 118, 119-22.

*City of Chicago v. Major* (1857), 18 Ill. 349, 359-60, appears to be the case in which it was first established that parents are entitled to a presumption that they have incurred a pecuniary loss upon the death of a child. Later, in *City of Chicago v. Scholten* (1874), 75 Ill. 468, 471, the court noted that this presumption arises from the common law rule that a parent is entitled to the services and earnings of an unemancipated minor child. (See also *Ekendahl v. Svolos* (1944), 388 Ill. 412, 414.) As it now stands, however, the presumption that parents derive significant financial benefits from their children bears little, if any, resemblance to modern family life for, as the Minnesota Supreme Court stated in *Fussner v. Andert* (1961), 261 Minn. 347, 352-53, 113 N.W.2d 355, 359:

> "It must be conceded that the majority of today's children render far less service to their parents than did children in the last century \*\*\*. Because of child-labor laws and the great increase in school and college attendance, fewer children work outside the home. It should be agreed that generally the child's earnings may go no further than to supplement the parent's considerable financial outlay in educating and rearing him."

(See also Decof, *Damages in Actions for Wrongful Death of Children,* 47 Notre Dame Law. 197, 198 (1971); Belfance, *The Inadequacy of Pecuniary Loss as a Measure of Damages in Actions for the Wrongful Death of Children,* 6 Ohio N.U.L. Rev. 543, 545 (1969).) This court expressed a similar view in *Cockrum v. Baumgartner* (1983), 95 Ill. 2d 193, 198-202 (where we held that parents could not recover the expenses of rearing a child to the age of majority in a "wrongful birth" action), stating that the

chief value of children to their parents is the intangible benefits they provide in the form of comfort, counsel and society.

A presumption is an inference which common sense draws from the known course of events. (*McElroy v. Force* (1967), 38 Ill. 2d 528, 531.) In its current form the presumption of pecuniary loss no longer conforms to this definition. We therefore hold that in this case, and in all similar cases not finally adjudicated, there can be no presumption of loss of earnings upon the death of a child since such a presumption represents an aberration from, rather than a reflection of, the typical family experience. However, we have concluded that parents are entitled to a presumption of pecuniary injury in the loss of a child's society, based on the holding expressed earlier in this opinion that the pecuniary injury for which parents may recover under the wrongful death statute includes this form of loss. Defendants may rebut the presumption by presenting evidence that a parent and child were estranged. Although the presumption of a loss of earnings no longer applies, in the rare case where the child earned income that was used to support the family these facts may, of course, be proved and a recovery had. This case does not present, and we therefore need not decide, the question of whether the loss-of-society presumption applies to children who have reached the age of majority.

Although we have considered our decisions in wrongful death cases involving the loss of a spouse or parent to be persuasive precedent on the issue of whether loss of a child's society is compensable under the pecuniary-injury standard in our statute, the fact remains that the loss of a child is distinguishable from these other forms of loss in one important respect, which must be considered in computing damages. As a general rule, neither children nor spouses bear the same heavy financial responsibility for either their parents or spouse that a parent automatically as-

sumes upon the birth of a child. This court acknowledged in *Cockrum*, as have several of our sister State courts in their decisions to permit recovery for loss of a child's society (see, *e.g., Wardlow v. City of Keokuk* (Iowa 1971), 190 N.W.2d 439, 446; *Fussner v. Andert* (1961), 261 Minn. 347, 352, 113 N.W.2d 355, 359; *Anderson v. Lale* (1974), 88 S.D. 111, 121, 216 N.W.2d 152, 158), the very substantial expenses associated with child-rearing. Moreover, many of the jurisdictions which have held that pecuniary loss encompasses loss of a child's society have also indicated that jurors are to consider child-rearing expenses in arriving at a verdict. (See *Fuentes v. Tucker* (1947), 31 Cal. 2d 1, 9, 187 P.2d 752, 757; *Haumersen v. Ford Motor Co.* (Iowa 1977), 257 N.W.2d 7, 17; *Sellnow v. Fahey* (1975), 305 Minn. 375, 382-83, 233 N.W.2d 563, 568; *Jones v. Carvell* (Utah 1982), 641 P.2d 105, 107; *Clark v. Icicle Irrigation District* (1967), 72 Wash. 2d 201, 205-10, 432 P.2d 541, 544-47. See also Note, *The Value of a Child*, 25 Baylor L. Rev. 118, 125 (1973); Note, *The New North Carolina Wrongful Death Statute*, 48 N.C.L. Rev. 594, 605 (1970); Comment, *Damages in Wrongful Death and Survival Actions*, 29 Ohio St. L.J. 420, 477 (1968). Compare *Jones v. Hildebrant* (1976), 191 Colo. 1, 3 n.1, 550 P.2d 339, 341 n.1, and *Sinn v. Burd* (1979), 486 Pa. 146, 151-52 n.3, 404 A.2d 672, 675 n.3 (jurisdictions that do not permit recovery for loss of society under a pecuniary-loss limitation and require deduction of child-rearing expenses).) We have concluded, in accord with these authorities, that for a wrongful death verdict to accurately reflect the parents' pecuniary injury, juries must be instructed not only to assign a dollar value to the loss of the child's society, but also to arrive at a figure, based on the evidence presented to them, which represents expenditures the parents would have been likely to incur had the child lived. Jurors should be directed to deduct these projected child-rearing expenses from any award for loss of society and any proved loss of

income.

Since, in this case, the trial judge instructed jurors that the presumption of pecuniary loss applied to loss of the child's income as well as to loss of his society, and did not direct that anticipated child-rearing expenses be deducted from the loss, we agree with the appellate court that this wrongful death verdict must be reversed and the cause remanded for a new trial on this claim.

On remand, no evidence regarding defendant Barnes' passing maneuver or failure to stop after the collision should be admitted. We agree with defendants' argument that this evidence is not relevant on any issue to be retried and with the appellate court's opinion that its admission constituted reversible error. Relevancy is established where a fact offered tends to prove a matter in controversy (*People v. Free* (1983), 94 Ill. 2d 378, 413; *Marut v. Costello* (1966), 34 Ill. 2d 125, 128), and in view of defendants' admission of liability, these matters were not in controversy.

We cannot agree, however, with defendants' arguments and the appellate court's decision that the morgue photographs of the decedent were inadmissible. Defendants now object to admission of these photographs on the grounds that they did not aid the jury in determining the extent of decedent's pain and suffering, that they inaccurately depicted his injuries, and that their probative value was outweighed by their prejudicial nature. At trial and in their post-trial motions, defendants objected only on the latter basis and therefore any other objections are deemed waived (73 Ill. 2d R. 366(b)(2)(iii); *Wilson v. Clark* (1981), 84 Ill. 2d 186, 189-90). If a photograph of a decedent has sufficient probative value it should be admitted in spite of the fact that it may be gruesome or inflammatory, and such a decision normally rests within the discretion of the trial court. (*People v. Williams* (1975), 60 Ill. 2d 1, 12; 32 C.J.S. *Evidence* secs. 709, 716 (1964).) We cannot say the trial judge abused his discretion in ruling that the photo-

graphs here at issue were not so inflammatory or grue-some as to outweigh their probative value in assisting the jury's determination of the extent of decedent's pain and suffering. Consequently, the photos will, on retrial, be admissible, assuming an adequate foundation is laid.

The appellate court opinion does not indicate whether it reversed the survival-claim verdict in part because of the somewhat confusing instructions the jury received concerning damages for decedent's pain and suffering. Instruction 12 in part advised the jurors that they were to determine the "damages resulting from the pain and suffering experienced by [decedent] prior to his death." Instruction 15 informed the jurors that, in determining decedent's pain and suffering, they were to "fix the amount of money which will reasonably and fairly compensate [the decedent's estate] for the conscious pain and suffering" he experienced. Defendants urge that these instructions are inconsistent and confusing since it may be inferred that the former instruction permits a recovery for what defendants call "unconscious pain and suffering," while the latter does not. We do not regard the omission of "conscious" in instruction 12 as reversible error here, but our reversal of the wrongful death verdict on the admission of irrelevant evidence concerning defendant Barnes' passing maneuver and failure to stop compels us to reverse the survival verdict as well, since both claims were tried together in the first segment of the trial.

The judgment of the appellate court is affirmed, and the cause is remanded for a new trial as to damages only on the wrongful death and survival counts.

*Affirmed and remanded,*
*with directions.*

JUSTICE CLARK, specially concurring:

I am pleased that the majority has decided to join the modern trend and allow parents to recover damages for

the loss of society in wrongful death actions involving their children. Although I concur in the result, I would like to point out two areas of disagreement with the majority opinion.

First, I do not agree with the majority's application of a setoff for child-rearing expenses. Although some jurisdictions have adopted such a setoff (S. Speiser, Recovery for Wrongful Death sec. 4:25 (2d ed. 1975)), I do not believe that this is an equitable formula to use in computation of damages. In the case at bar, damages were awarded for the loss-of-society count of the complaint. Since plaintiff's decedent was 17 years old at the time of his death, a setoff for college tuition and living expenses could substantially reduce the loss-of-society award.

Second, I believe that the majority should consider whether the loss-of-society presumption applies to children who have reached the age of majority. I would not limit this opinion to minor children, since I believe the logic embodied in the majority opinion would dictate a similar result if this case involved a 27-year-old rather than a 17-year-old. In the case at bar, plaintiff's decedent was at a point in his life where his parents could reasonably anticipate receiving advice, companionship and assistance. This presumption is equally valid for adult and minor children.

Although I disagree with these two aspects of the majority opinion, I am heartened that the court has decided to extend *Elliott v. Willis* (1982), 92 Ill. 2d 530, to discard an inequitable distinction that began with English interpretations of Lord Campbell's Act.