KENNETH H. GABRIEL, Adm'r of the Estate of Kenneth J. Gabriel, Deceased, and Indiv., Plaintiff-Appellee, v. ILLINOIS FARMERS INSURANCE COMPANY, Defendant (Sharon Colasurdo, Defendant-Appellant).

First District (5th Division)   No. 87—397

Opinion filed March 18, 1988.—Rehearing denied July 19, 1988.

Nelson H. Cotnoir, of Blue Island, for appellant.

Robert F. Lisco, of Lisco & Field, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Defendant, Sharon Colasurdo (Sharon), the mother and noncustodial parent of decedent, Kenneth J. Gabriel, appeals from an order of the circuit court of Cook County finding that she was not entitled to share in insurance proceeds received in settlement of a wrongful death claim; the court awarded the proceeds of the settlement to plaintiff, Kenneth H. Gabriel (Kenneth), decedent's father and custodial parent.

The pertinent facts are as follows. Kenneth, as administrator of decedent's estate, filed a wrongful death action against Robert Concannon, charging him with the wrongful death of decedent on September 23, 1983; decedent was 16 years old at the time Concannon's car struck and killed him. Kenneth also filed a complaint in chancery against the Illinois Farmers Insurance Company, his own insurance carrier, to reform the policy held by him with respect to its "underinsurance" provisions. Illinois Farmers subsequently agreed to the reformation and consented to increase the underinsurance coverage from $25,000 to $50,000 subject to a $25,000 deductible because of the insurance coverage available under Concannon's insurance policy. On September 18, 1986, under the action to reform the Illinois Farmers policy, Kenneth also filed a petition to adjudicate dependency, requesting

that the court determine the distribution of the net amount available under the insurance policy settlement pursuant to the wrongful death statute, which provides that distribution of amounts recovered as damages be made to a surviving spouse and next of kin "in the proportion *** that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person" (Ill. Rev. Stat. 1985, ch. 70, par. 2).

A hearing on the matter was held on October 3, 1986. Sharon and her daughter/decedent's sister, Kristine, appeared with an attorney. Upon determining that their attorney had not filed an appearance on their behalf, the trial court advised them they could not participate in the proceedings, but indicated they would be allowed to participate if an appearance were filed. Apparently Sharon's attorney was not prepared to file his appearance at that time and the court advised him that he, Sharon and Kristine could observe the proceedings, and Sharon's counsel was instructed that he could later pursue whatever action he deemed necessary if he was not "satisfied" with the disposition rendered after hearing on the petition.

The hearing proceeded and Kenneth testified that in 1970 he was awarded the sole care, custody and control of decedent (age three at the time) and Kristine; decedent resided exclusively with him until his death in September 1983; and he and decedent were very close, went on camping and fishing trips, and did home chores together. Kenneth further testified that Sharon's relationship with decedent was "none" and that "she never came around to see him"; that her contribution of moneys toward the maintenance and support of decedent was "zero"; her visits with decedent and Kristine were not regular—"maybe once a year, once every six months"; that she saw decedent "maybe one time" in the year prior to his death; that her relationship with decedent was "distant *** they didn't really know each other"; and on several occasions she took Kristine to Disney World, but did not take decedent.

Kenneth's sister and present wife also testified to the effect that Sharon did not make "regular visitations with her son"; decedent did not have any relationship with Sharon; decedent had a very close relationship with Kenneth—"they depended on each other"; that Sharon never came to visit decedent or call to inquire about his welfare; and that Sharon contributed no money toward decedent's support.

Sharon also was called as a witness by the court. She testified that she saw decedent "all the time" and gave him money "all the

time." The following colloquy also occurred between the court and Sharon:

"Q. Did you ever take him [decedent] to Disney World?

A. No. Because he wasn't around. He was in the halfway house. I wanted to take—

* * *

Q. What do you mean by halfway house?

A. I don't know if it's called a halfway house.

Q. Describe what you mean.

A. It's like a detention home. For the last year of his life almost he was there *** for about a year."

At the conclusion of the hearing, the court made the following ruling:

"The Court has heard the evidence on the petition to adjudicate dependency, and I have had the opportunity to observe the demeanor of the witnesses and weigh their credibility. The Court finds that the evidence is clear and convincing that no relationship existed between Sharon Colasurdo and the deceased child Kenneth J. Gabriel. The Court further finds that there was no expectancy for support based on the evidence."

On October 6, 1986, the trial court entered an order, pursuant to the hearing on October 3, finding that Kenneth was entitled to 100% of the available proceeds under the Illinois Farmers insurance policy. In also finding that Sharon was not entitled to share in the proceeds, the court stated that she "has suffered no loss to society and has no reasonable expectation of pecuniary benefits due to the death of her son." The court further found that Kristine, decedent's sister (age 20), had voluntarily waived her rights to collect a part of any funds in connection with the insurance claim. Accordingly, the court's order provided for a distribution of the net proceeds of the settlement after deduction of costs, expenses and attorney fees to Kenneth in the net amount of $9,789.63.

On October 30, 1986, Kenneth moved to vacate the October 6 order because the settlement with Illinois Farmers had not "materialized." The court then set aside the order. On November 3, Sharon and her daughter, represented by the same attorney who had appeared with them at the October 3 hearing, filed a motion for reconsideration of the October 6 order. The motion was accompanied by the affidavits of Sharon, Kristine, and other persons who knew Sharon and the family members. At the time of filing the motion to reconsider, the appearance of Sharon and Kristine's attorney had not been filed, and Kenneth moved to strike the motion. In the mean-

time, the insurance proceeds became available. On November 24, Sharon's attorney filed an appearance on behalf of her and Kristine. On the same day, the court denied Kenneth's motion to strike and set the motion for reconsideration for hearing on January 7, 1987.

At the hearing on January 7, Sharon and Kristine were asked by the court if they had anything to add to their motion for reconsideration and the affidavits attached to it and they indicated they would stand on the motion and affidavits. The content of the affidavits consisted of the following averments. In Sharon's affidavit, she stated that since 1970 she had exercised her visitation rights with her two children on a "regular basis"; that she loved her children and had a "very close and warm relationship" with them; that she had always done her very best to be a good mother to each of the children; and that she provided "financially and spiritually to their growth, including provisions for clothing and spending money." Kristine stated in her affidavit that her mother "saw me and my brother on a regular basis all our lives"; that Sharon loved her and decedent and was a "good mother to us"; that Sharon was "with us all our lives and we saw our mother as much as we could"; and that Sharon "took care of us just like my father did." The affidavits of James Colasurdo, Sharon's present husband, and three friends also attested to the facts that Sharon was a good mother to decedent, she had a loving relationship with him, she contributed to his support, and she visited him regularly.

At the conclusion of the arguments of counsel, the trial court stated as follows:

> "The Court has heard the arguments and I recall this case very, very vividly. I also want to state that the Court has paid particular attention to the proposed affidavits that are appended to the motion for reconsideration.
>
> You still have Supreme Court Rule 191, and I can anticipate all of the objections to the statements contained in those affidavits. *They are conclusory and would be objectionable and would not be admissible.*
>
> Secondly, the Court remembers the daughter testifying in this courtroom, and remembers the mother sitting in this courtroom. They had a full opportunity to air their case. \*\*\* They had their day in court and they did not take advantage of it, and therefore, based on this particular motion with the proposed affidavits, the motion for reconsideration will be denied." (Emphasis added.)

This appeal followed.

On appeal, Sharon seeks reversal of the court's October 6 order and remandment of the cause for a hearing on her motion to reconsider, arguing in support thereof that: (1) as a noncustodial parent of a minor child and next of kin, she is entitled to share in the damages awarded pursuant to the wrongful death statute; (2) at a hearing to determine dependency under the wrongful death statute, a noncustodial parent of a deceased minor child enjoys a presumption of having suffered pecuniary injury in the loss of a child's society; and (3) the trial court erred in acting on the petition to determine dependency without affording her adequate representation.

On the other hand, although Kenneth does not dispute the fact that a noncustodial parent is presumed to have suffered a pecuniary injury in the loss of a child's society, he argues that: (1) this presumption was overcome by the evidence presented to the court; (2) due process was accorded defendant; (3) the fact that the court favored his evidence over defendant's is no basis for reversal; and (4) judgment for him can be affirmed on principles of insurance contract law independently of any considerations arising out of the wrongful death action. We agree with Kenneth's first three arguments.

■■■ In 1984, our supreme court joined other jurisdictions in interpreting "pecuniary injuries" in our Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, par. 1 et seq.) to include the loss of a child's society. Loss of a child's society has been held to encompass the deprivation of companionship, guidance, security, love, and affection between parent and child. In determining the pecuniary injury suffered by reason of the loss of the society of a child by a surviving parent or next of kin, the fact finder must deduct any future projected childrearing expenses that the survivor would have incurred but for the wrongful death and any proved loss of income. Although surviving parents in a wrongful death action are entitled to a presumption of pecuniary injury in the loss of a child's society, that presumption may be rebutted by presenting evidence that a parent and child were estranged. *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.

■■ ■ In the instant case, a determination of whether Sharon suffered pecuniary injury in the loss of decedent's society turned upon her credibility since Kenneth presented evidence to the effect that she suffered no loss because she was estranged from decedent. Where testimony is contradictory, a trial court is in a better position than a court of review to determine the credibility of the witnesses and to weigh the evidence (*Needy v. Sparks* (1979), 74 Ill. App. 3d 914, 393 N.E.2d 1252) and the court's decision will not be disturbed unless it is against the manifest weight of the evidence (*Ash v. Bar-*

*rett* (1971), 1 Ill. App. 3d 414, 274 N.E.2d 149). Here, the trial court clearly gave more weight to Kenneth's evidence and his credibility over Sharon's and we cannot say that its determination was against the manifest weight of the evidence. Since the court in effect found that Sharon was estranged from decedent, therefore, the presumption of her pecuniary injury in the loss of decedent's society was overcome.

Moreover, we note that nothing in Sharon's motion for reconsideration disclosed what specific child-rearing expenses, if any, she incurred during decedent's lifetime and, pursuant to the *Bullard* rule, what child-rearing expenses she would have incurred if decedent had survived, or what amount of future earnings of decedent she would have enjoyed had decedent lived. Based on the lack of these pertinent facts, the trial court would have had no way of determining what Sharon's loss of decedent's society was legally worth in terms of dollars or cents or what percentage of the award of the insurance proceeds she would have been entitled to.

In light of the foregoing, we hold that the trial court properly denied Sharon's motion for reconsideration of the October 6, 1986, order in favor of Kenneth.

■ ■ We also reject Sharon's argument that the trial court erred in acting on the petition to adjudicate dependency without affording her adequate representation, thereby denying her due process of law. The essential elements of due process of law are notice and the opportunity to be heard or to defend. (*1200 Condominium Association v. The 1200* (1977), 47 Ill. App. 3d 729, 365 N.E.2d 388.) Here, Sharon had two weeks' notice of the hearing on the petition to adjudicate dependency, she was present at that hearing with her attorney, she was told she could participate if her attorney filed an appearance, her attorney was advised by the court that he could later come in and move to vacate any disposition made by it after the hearing if he was not "satisfied" with the disposition, she was called as a witness by the court at the hearing and thus given an opportunity to be heard, and she was afforded a hearing on her motion for reconsideration at which time she elected to stand on her motion and the affidavits attached thereto. Based on these facts, we therefore hold that the constitutional requirements of due process were met.

■ Finally, we briefly comment on Kenneth's contention that the judgment in his favor can be affirmed on principles of insurance contract law independently of any considerations arising out of the Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, par. 1 *et seq.*). We do not address this argument since it was not raised in the trial

court and it is thus waived (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337) and, in any event, discussion of it would amount to *dicta* in light of our determination that the trial court's orders were proper.

For the foregoing reasons, therefore, the order appealed from is affirmed.

Affirmed.

LORENZ, P.J., and PINCHAM, J., concur.