*In re* ESTATE OF RENEE A. LANDE, Deceased (Gladys Lande, Independent Adm'r, Petitioner-Appellee, v. Gilbert Lande, Respondent-Appellant).

Fourth District   No. 4—90—0519

Opinion filed February 21, 1991.

Robert F. Lisco, of Lisco & Field, of Chicago (Jill Kline, of counsel), for appellant.

Hayes & Power, of Chicago (Joseph A. Power, Jr., Thomas G. Siracusa, David A. Novoselsky, and Linda A. Bryceland, of counsel), for appellee.

PRESIDING JUSTICE LUND delivered the opinion of the court:
This is an appeal from a February 22, 1990, order of the circuit court of Adams County, which provided for the distribution of a wrongful-death settlement, and from the order of June 28, 1990, de-

nying the motion for reconsideration. The order provided for distribution of 90% of the funds to Gladys Lande, mother of decedent Renee A. Lande, and 10% of the funds to Anita Lande, a sister of Renee. The order provided that Gilbert Lande, Renee's father, would receive nothing.

Renee died at age 23 in a vehicle accident in Adams County. Immediately preceding her death, she was a television news reporter. The trial court's February 22, 1990, order specifically provided:

"1. Gilbert Lande is the natural father of the decedent, Renee A. Lande, Gladys Lande is her natural mother, and Anita Lande is her sister.

2. Following the divorce of Gilbert and Gladys Lande, when Renee was about two years old, Gilbert provided minimal child support and declined to exercise visitation with the children. After his child support was reduced shortly after the divorce due to a decrease in his income, Gilbert never increased the support despite subsequent increases in his income.

He testified that he spoke with Renee two or three times while she was in high school, contacting her by phone, and also when she was in college. He lived twelve blocks from his daughters' home for nearly fifteen years while they attended grade school, high school and college, but never attempted to visit them. He did not send his daughters cards or letters. He claims that his former wife, Gladys, discouraged and/or prevented contact with the children. Gladys denied such conduct on her part, and Anita, who was very close to Renee in age and as a sister, testified Renee never mentioned being contacted by Gilbert.

At the time of her death, Gilbert did not know where Renee lived or how she was employed, and did not know when she had moved out of her mother's home. He did not pay any of her college expenses, nor did he receive any financial support from Renee, despite being disabled while Renee was employed after college.

3. The testimony of Gladys and Anita is credible, while that of Gilbert is not totally credible.

4. In view of the evidence and the circumstances, Gilbert was estranged from his daughter, Renee, and therefore is not entitled to recover for a claim of pecuniary injury due to loss of society. *Gabriel v. Illinois Farmers Insurance Co.*, [171] Ill. App. 3d 663 (1988)."

Gilbert contends that the evidence did not establish by clear and convincing evidence that he was estranged from Renee and, additionally, that estrangement is not sufficient and a showing of abandonment is necessary to justify an order denying him part of the wrongful-death settlement.

Section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1987, ch. 70, par. 2) provides for recovery for pecuniary injuries and includes the following provisions:

"[N]ext of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person."

■ The distribution of the funds has been tied to the right to recover for loss of a child's society, in the absence of evidence of the child's actual support of a parent or sibling. (*Gabriel v. Illinois Farmers Insurance Co.* (1988), 171 Ill. App. 3d 663, 668-69, 525 N.E.2d 864, 867-68.) Parents are entitled to a presumption of pecuniary injury in the loss of a child's society, but this presumption may be rebutted by evidence that a parent and child were estranged. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 517, 468 N.E.2d 1228, 1234.) We are aware that the question of whether the loss of society presumption applies to children who have reached the age of majority was not present in the *Bullard* case. (*Bullard,* 102 Ill. 2d at 517, 468 N.E.2d at 1234.) While the *Bullard* opinion expressly uses the word "estranged," Gilbert would have us decide that there must be a finding of abandonment, citing *Mortensen v. Sullivan* (1972), 3 Ill. App. 3d 332, 335, 278 N.E.2d 6, 9. Gilbert also contends that the *Gabriel* opinion suggests the presumption of loss discussed in *Bullard* must be rebutted by "clear and convincing" evidence. We find no such suggestion in *Bullard* or elsewhere. The *Gabriel* appellate opinion quoted the trial court decision, which stated in part: " 'The Court finds that the evidence is clear and convincing that no relationship existed ***.' " (*Gabriel,* 171 Ill. App. 3d at 666, 525 N.E.2d at 866.) There is no further reference to "clear and convincing," and the appellate opinion does not adopt that test. We do not adopt the clear and convincing test, but acknowledge that issue is not before us. The trial evidence was in fact clear and convincing.

The *Mortensen* opinion discussed loss of future financial support from a son who was near college age at the time he was killed. At the time of the *Mortensen* opinion, a presumption of pecuniary loss upon the death of a child existed, which arose from the common law rule

that a parent is entitled to the services and earnings of an unemancipated minor child. This presumption was put to rest by the opinion in *Bullard.* (*Bullard,* 102 Ill. 2d at 516-17, 468 N.E.2d at 1234.) The trial court in *Mortensen* held there was no possibility that the decedent would ever contribute to his father's support at any time, basing its decision solely on the fact that the father had sought termination of child support because the son was employed and self-supporting. This fact, combined with evidence that the son had applied for college admission, was the only evidence which would have defeated the then-existing presumption of benefits. The facts are not similar to the present case, and the opinion predates the *Bullard* decision. We find it inapplicable.

Other authorities are cited by Gilbert, arguing his abandonment theory. If the theory was adopted by this court, it would be in conflict with the *Bullard* opinion and, in our opinion, would be unjustified.

The hearing for purposes of determining the distribution of the agreed settlement consisted first of testimony in open court by Gladys Lande and the decedent's sister, Anita Lande. Based on representation of counsel that for health reasons Gilbert could not appear in court, he was allowed to subsequently give an evidence deposition.

Gladys Lande testified of the 1967 divorce, at which time Renee was two years of age (Anita was one year younger). Support was set at $250 per month but, within a few months, Gilbert petitioned for modification based upon no income, and the payments were reduced to a total of $20 per week for both children. According to Gladys (and also testified to by Gilbert), this amount was never increased. Gladys also testified to raising the daughters in a close, loving relationship, and that Gilbert never contacted the two girls. No gifts, cards, or letters were received from Gilbert. According to Gladys, Renee never indicated an interest in seeing Gilbert. Renee took a position in Quincy, Illinois, as a television news reporter after graduating from Northern Illinois University. Gladys and Anita talked to her daily by telephone, and Renee visited Gladys' home in Skokie about once a month.

Anita's testimony substantiated that of Gladys and included that she had never been contacted by her father prior to Renee's death. She did not know him. Anita also testified of the close family relationship between her mother, Renee, and herself.

Gilbert painted a somewhat different scene. He admitted that even though he was living in Skokie within 12 blocks of the girls' home, he had never seen Renee after the divorce. He did testify he had driven by the house. He blamed the marital breakup on Gladys' realization that she made a mistake marrying one of his religious per-

suasion, and attributed his lack of visitation to Gladys' "very hostile" attitude toward him. He did not seek visitation and "decided because of her belligerent nature and antagonism to stay away." He paid the $20 child support per week until the girls were age 18 and he never offered to increase the amount after he went back to work, which was not long after the court reduced the support payment. He said he called Renee at her home at least three times when she was in high school and during holidays while she was in college. He did not know of Renee's position in Quincy until after her death. He stated he received two Father's Day cards from Renee, but was not sure when they arrived. He did not keep the cards. Gilbert was, by profession, an insurance adjuster. His college degree is from De Paul University, and he attended one year of law school at De Paul University. He was first married in the 1950's and had two children. The second marriage was to Gladys. The third marriage resulted in the birth of a daughter, Loree, on December 23, 1976, and this marriage ended in divorce in 1981. He testified he pays "approximately $300 a month" for Loree's support but added "I forget the exact amount. A lot of times I pay more if I have extra money."

Gilbert is on social security disability and allegedly suffers a lower back problem, coronary artery disease, and depression problems, as a result of which he suffers severe pain, shortness of breath, and anxiety reaction. He testified he attended Renee's funeral at the Lutheran church, and the evidence indicated he gave a memorial of $100. He is now married for the fourth time. During the deposition, the following questions and answers took place:

"Q. Are you claiming that you feel Renee would have supported you, provided financial support for you?

A. Definitely.

Q. What do you base that claim on?

A. My conversation, the fact that I found out a lot about her after her death. She was a real lady and decent person. I think she would help. I had conversation with her, and she seemed to be a girl without any prejudice, and she was not as brainwashed as the other girl. She was a very nice gal."

■ The trial court is in a better position to determine the credibility of conflicting testimony, and that court's decision will not be disturbed unless it is against the manifest weight of the evidence. (*Gabriel*, 171 Ill. App. 3d at 668-69, 525 N.E.2d at 867-68.) In the present case, the trial court specifically found Gilbert's testimony was the less credible, and it had good reason for that determination.

■ Gilbert never saw Renee after the divorce. Although he said he was in contact with her by phone, he did not know of her Quincy position. For 17 to 20 years, he lived 12 blocks away from his daughters. No offer was made to increase child support, even though he returned to work within one year of the court-ordered decrease. It is interesting that no one else knew of the few supposed calls to Renee during her high school and college years. This supposedly happened, although he did not bother to call his other daughter, Anita, during this same time period. No graduation gifts, birthday gifts, or even cards were sent. No college funds were given or offered. The trial court's order finding Gilbert estranged from his daughter and depriving him of any portion of the wrongful-death settlement is affirmed, as is the trial court's order denying the motion for reconsideration.

Affirmed.

GREEN and STEIGMANN, JJ., concur.