SECOND DIVISION
DECEMBER 23, 2008

1-07-0928

| | | |
|---|---|---|
| MARGUERITE WILLIAMS, Individually, and as Special Administrator of the Estate of Jesse Williams, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| RUSH-PRESBYTERIAN ST. LUKE'S MEDICAL CENTER, a Corporation, ANDEM E. EKPENYONG, THOMAS A. MASON, and ELIZABETH ALVIN, | ) ) ) ) | No. 03 L 013889 |
| Defendants | ) ) | |
| (Jenea Banks, as Mother and Natural Guardian of Jessica Williams, a Minor, | ) ) ) | Honorable Henry R. Simmons, |
| Intervenor-Appellant). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

Intervenor-appellant Jenea Banks (Jenea), individually and as mother and natural guardian of Jessica Williams (Jessica), a minor, appeals from the circuit court of Cook County's determination of the percentages of dependency to be allotted to decedent Jesse Williams's surviving spouse, Marguerite[1] Williams (Marguerite), and his surviving minor daughter, Jessica. It was Marguerite who, individually and as special administrator of the estate of the decedent, Jesse Williams (Jesse), filed the wrongful death action which resulted in a monetary award. The division of that award by court order of December 21, 2006, is now at issue. Jenea contends that the circuit court erred in dividing the award, 65% to Marguerite and 35% to Jessica. Jenea contends that the division was contrary to the manifest weight of the evidence and an abuse of discretion. It is her contention that

_____

[1]Also listed in the record as "Margarit."

the circuit court should have divided the award equally between Marguerite and Jessica, thereby giving each a 50% share. She also contends that the circuit court erred in admitting an exhibit relating to the life expectancy of the decedent. Finally, she asserts that the circuit court erred in denying her motion for sanctions against Marguerite for failing to agree to a continuance which caused Jenea to expend money to appear at a hearing which she believed to have been unnecessary. We affirm the judgment of the circuit court of Cook County.

BACKGROUND

Jesse Williams died on June 3, 2002, at Chicago's Rush-Presbyterian-St. Luke's Medical Center (Rush Hospital), where he was being treated for complications of sickle cell disease and symptoms commonly termed sickle cell crisis. Marguerite subsequently filed a medical malpractice/wrongful death action against the hospital and some of its employees, alleging that their medical malpractice resulted in Jesse's death. Marguerite brought this action on her own behalf and as special administrator of Jesse's estate. On June 14, 2006, an order was entered by the circuit court approving a settlement of $2.1 million in favor of Marguerite and Jesse's estate. The order also provided that percentages of dependency, which would control the distribution of this award, were 75% to Marguerite and 25% to Jessica. Jenea, as mother and natural guardian of Jessica, filed a petition to intervene in the case. It is that petition that gave rise to the issue here. In her petition, she sought a 50/50 apportionment of the settlement proceeds between Marguerite and Jessica. An evidentiary hearing was held by the trial court on December 15, 2006. The record does not contain a transcript of that hearing. Accordingly, the parties have stipulated to a statement of facts of the hearing.

The facts as adduced from the stipulation are summarized in pertinent part as follows. Both parties sought to have individual documents written by Dr. Martin H. Steinberg admitted into evidence. Marguerite sought to have admitted a letter report by Dr. Steinberg, which stated, based upon his expertise, that with proper treatment, Jesse would have survived "into the sixth or seventh decade of life." At the time the letter report was written, Dr. Steinberg was a professor of medicine and pediatrics at Boston University School of Medicine, as well as the director of the school's Center of Excellence in Sickle Cell Disease. Jenea sought admission of a treatise by Dr. Steinberg which was entitled *Mortality in Sickle Cell Disease: Life Expectancy and Risk Factors for Early Death*. In that treatise Dr. Steinberg gave the median age of death among male patients with sickle cell anemia as 42 years. Marguerite and Jenea each objected to admission of each other's documentary evidence. The court overruled the objections and admitted both documents. The court also stated that it would look at the documents and give them "whatever weight they deserved."

Marguerite testified to the following pertinent facts. She was Jesse's widow, having married him on May 15, 1998. They met in October 1994 and began dating in March 1995. She saw him every day from that date until his death. They began living together in July 1997. They were never separated after the date of their marriage. They had sexual relations two or three times a week. She depended on Jesse for everything. He took care of the family, paid all the bills, and kept her "balanced and alive." At the time of his death on June 2, 2002, he was 36 years old and Marguerite was 32 years old.

Marguerite described a business owned by Jesse, called JMW, Inc. It was a trucking company. She was its vice president, treasurer and secretary and kept its books. Before starting the

business, the decedent had driven a truck for a Matteson, Illinois, trucking company. Marguerite's testimony was unclear regarding whether Jesse started the business in 1999 or 2001. Marguerite's parents loaned them $3,500 to buy a truck for the business. All the property was in her name. Jesse's income tax records, identified by Marguerite, listed his 1998 and 1999 W2 income as approximately $22,000 and $42,000, respectively. Jesse's gross corporate income for the years 2000, 2001 and 2002 was $71,000, $87,000, and $52,000, respectively.

Marguerite and Jesse filed separate tax returns during their marriage. Marguerite worked for the City of Chicago from June 1996 until September 2002, six months after Jesse's death, when she moved to Nevada. She worked for the Clark County School District in Nevada for nine months. From October 2003 until her return to Chicago in September 2005 she lived with Darryl Carrouthers in Nevada. Carrouthers helped her with household living expenses. The stipulated statement of facts reveals no other information about the relationship between Marguerite and Carrouthers. Marguerite's tax returns showed adjusted gross income for 1998 through 2005 ranging from a high of approximately $50,000 in 2003 to a low of approximately $18,000 in 2005. Because of a medical disability, she received a monthly disability payment of $548. The only money she received after Jesse's death was life insurance proceeds of $50,000. The year of his death she also withdrew about $17,000 from her pension plan. She identified exhibits establishing Jesse's debts as $5,967 for medical expenses, of which she had paid 10% at some point prior to the hearing, and $9,744.19 for funeral expenses. Marguerite apparently paid most of the funeral expenses, as the trial court's order dividing the settlement proceeds reimbursed her for "funeral and monument expenses" of $9,054.19.

Marguerite had two children who were not Jesse's children, a 16-year-old daughter and a 13-

year-old son. She received monthly total child support payments of $456 for them. In July 2006 Marguerite took a leave of absence from her $13-per-hour administrative assistant job because of depression. She subsequently was unable to work and filed for chapter 7 bankruptcy in 2004. She was discharged from that bankruptcy on February 8, 2006. Marguerite testified that it was hard for her to survive after Jesse's death. She sought medical treatment for depression and also suffered from panic attacks.

Marguerite testified that Jesse loved Jessica very much. Jessica would visit them during summers and at Christmas. Jesse would take Jessica to the amusement park. However, she was unaware that Jesse had visited Jessica at Jessica's home in Champaign, Illinois.

Jenea testified that she was Jessica's mother and they lived in Champaign, Illinois. Jesse was Jessica's natural father. Jessica was born on June 15, 1995, in Chicago. Jesse was present at Jessica's birth and acknowledged that she was his child. Jenea and Jesse began their relationship in 1992 and lived together from June of that year until March 4, 1998, when she moved to Champaign with Jessica.[2] According to Jenea, Jesse visited Jessica in Champaign and telephoned her twice a week. When Jenea and Jessica moved to a second Champaign location in March 2002, Jesse also visited Jessica at that address and telephoned her once a week. Jenea claimed that Jessica and Jesse would "get together" on Jessica's birthday and during Christmas, and on those occasions Jesse would give Jessica presents. In addition, from September 1999 until June 2000, Jessica lived with Jesse while attending school in Chicago. Jesse assisted in providing parental guidance to

---

[2]The stipulated facts do not explain the discrepancy between Marguerite's claim of living with the decedent from July 1997 until his death in 2002, and Jenea's claim that she lived with him from June 1992 until March 1998.

Jessica. He paid for clothes, shoes, school uniforms, pictures, toys, and a bicycle for Jessica. Starting in 2002, Jesse wired $50 in child support to Jenea every two weeks.

Jenea testified that she worked at Dollar General Corporation and lived paycheck to paycheck, with no net worth. She identified a pay stub showing that she was earning gross pay of about $260 per week. She received food stamps and also had a medical card for Jessica. She had one other minor child and also had custody of her sister's three children.

Jessica, who was 11 years old at the time of the hearing, testified that she had attended the funeral of her father, which made her very sad. She missed him. She recalled living with Jesse in Chicago and also recalled that he visited her in Champaign. He would take her shopping and buy her clothes. She also spoke to him on the telephone for 10 minutes at a time.

Jesse's sister, Jacqueline Williams, testified that she lived in Chicago and was close to Jesse. They talked about Jessica, whom Jesse loved very much. Based on her observations of Jesse with Jessica, they had a close and caring relationship. Jesse had been a loving and caring father toward Jessica.

Jesse's cousin, Harold Raddle, testified that he too lived in Chicago and was like a brother to Jesse. He was Jessica's godfather and had observed Jesse and Jessica together. He had also accompanied Jesse to Champaign to visit Jessica. It was his opinion that Jessica "meant everything" to Jesse. Raddle testified that Jesse and Marguerite had verbal disputes as in any marriage. He liked Marguerite and thought she was a good wife to Jesse. However, he also testified that Jesse never told him that Marguerite was involved in Jesse's trucking business.

Jesse's father also testified that Jesse never told him of Marguerite's involvement in the

6

trucking business. He had observed Jesse with Jessica and believed him to be involved in her life from her birth until his death. Jesse was in constant contact with Jessica and always talked about her.

The trial court, in its oral decision, stated that it agreed with Marguerite's position that a relationship between a husband and wife was substantially different from one between a father and daughter. The court also found that although decedent loved "everyone" in the case, he had more day-to-day contact with Marguerite and slept with her every night. The court then fixed the dependency of Marguerite at 65% and the dependency of Jessica at 35%. Prior to that division of the settlement proceeds, Marguerite was to be reimbursed for funeral and monument expenses of $9,054.19. In a subsequent written order, the trial court found that the net amount of the settlement proceeds, after payment of funeral expenses, was $1,615,372.40. From this amount Marguerite was to receive $1,049,922.06 and Jessica, as a minor, was to receive $565,380.34. This latter payment was contingent upon the sum being paid only to a guardian appointed by the probate division of the circuit court of Cook County or the circuit court where Jessica resides and only after the probate division of the circuit court of Cook County or the circuit court in Jessica' county of residence approved a bond or other security for Jessica. This timely appeal ensued.

ANALYSIS

Dependency hearings are creatures of statute (740 ILCS 180/1 *et seq*. (West 2006)) in which the trial court is given the responsibility of determining the relative dependencies of the parties. Johnson v. Provena St. Therese Medical Center, 334 Ill. App. 3d 581, 588, 778 N.E.2d 298, 304 (2002). The standard of review is abuse of discretion. Adams v. Turner, 198 Ill. App. 3d 353, 356,

555 N.E.2d 1040, 1042 (1990). We may reverse the trial court's determination only if no reasonable person could agree with it. In re Adoption of D., 317 Ill. App. 3d 155, 160, 739 N.E.2d 109, 113 (2000). The statute does not define the term "dependency." However, case law establishes that the term connotes, in part, the support obtained by a party from a previously existing relationship with the deceased, although other factors are also relevant. Johnson, 334 Ill. App. 3d at 592, 778 N.E.2d at 307. Also at issue is a calculation of the loss of society by the parties, which includes the "'companionship, guidance, advice, love, and affection'" formerly offered by the decedent. (Emphasis omitted.) Bullard v. Barnes, 102 Ill. 2d 505, 514, 468 N.E.2d 1228, 1232 (1984), quoting Hall v. Gillens, 13 Ill. 2d 26, 31, ___ N.E.2d ___ (1958); see Singh v. Air Illinois, Inc., 165 Ill. App. 3d 923, 933, 520 N.E.2d 852, 858 (1988). When one of the parties is the widow of the deceased or a direct descendant, there is a presumption that they have sustained a substantial pecuniary loss (Cooper v. Chicago Transit Authority, 153 Ill. App. 3d 511, 519, 505 N.E.2d 1239, 1243 (1987); Ferraro v. Augustine, 45 Ill. App. 2d 295, 300, 196 N.E.2d 16, 19 (1964)). This presumption applies to both parties in this case.

In reaching its decision regarding apportionment of the settlement proceeds, the trial court placed great emphasis upon the unique relationship between spouses. It also noted that Marguerite and Jesse had shared each other's company much more than Jesse and Jessica. Marguerite's standard of living while she and Jesse were married far exceeded that of Jenea and Jessica. In light of these factors and the applicable standard, we find no abuse of discretion in the trial court's determination of the relative dependencies and commensurate apportionment of the settlement proceeds between Marguerite and Jessica. Therefore we will not disturb that finding.

Jenea claims that the trial court erred in its admission of Dr. Steinberg's letter, which stated his opinion that with proper medical care, Jesse could have lived into his sixties or seventies. Jenea fails to explain what prejudice arose from the admission of the document. The trial court stated only that it would consider the written documents submitted by both parties and give them appropriate weight. In determining pecuniary losses sustained as a result of a death, courts may consider the age of the deceased at the time of his death, his life expectancy, and the life expectancies of his widow and next of kin. Baird v. Chicago, Burlington & Quincy R.R.Co., 63 Ill. 2d 463, 471-72, 349 N.E.2d 413, 417 (1976). The stipulated statement of facts reveals no other evidence concerning life expectancies. Further, Jenea does not explain the relevance of such evidence or the lack thereof as it relates to her claim. We find no error or prejudice in the admission of the evidence in question.

Finally, we find no merit to Jenea's claim that the trial court should have granted her motion for sanctions against Marguerite for "forcing" Jenea to undertake a trip to Chicago from Champaign for a hearing on Jenea's motion for reconsideration. The record establishes that Jenea did not establish a hearing date or briefing schedule for her motion. Marguerite then asked the trial court to set a briefing schedule and a hearing date. Jenea contends that Marguerite's motion was unnecessary. Jenea cannot seek sanctions for what was clearly appropriate procedural activity by Marguerite. Accordingly we find no merit to this contention.

For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

KARNEZIS, P.J., and SOUTH, J., concur.