*In re* ESTATE OF NEAL EDWIN FLAKE, Deceased (Erica Flake, Appellant, v. Daniel Edwin Flake, Appellee).

Third District   No. 3—85—0075

Opinion filed October 23, 1985.

David B. Daley, of Sutkowski & Washkuhn, of Peoria, and Keith Queensen, of Rerat Law firm, P.A., of Minneapolis, Minnesota, for appellant.

Richard W. Zuckerman, of Goldfine & Bowles, P.C., of Peoria, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

Erica Flake, a minor, appeals the division of an award under the Wrongful Death Act and the Federal Employer's Liability Act. We affirm.

Decedent Neal Flake was killed in 1981 in an accident while working for his employer, the Peoria and Pekin Union Railway Company. Neal's sister, not a party here, instituted an action as his representative under the Federal Employer's Liability Act (F.E.L.A.) (45 U.S.C. sec. 51 (1976)). The action listed Daniel Flake and Erica Flake as beneficiaries entitled to damages. Daniel is Neal's child from his first marriage. Erica was found to be Neal's illegitimate daughter by the probate court of Peoria County and was born posthumously.

This court reviewed a preliminary matter in the F.E.L.A. action *sub nom. Knobloch v. Peoria & Pekin Union Ry. Co.* (1983), 118 Ill. App. 3d 205, 454 N.E.2d 1083. In that case, we reversed the lower court's denial of Erica's mother's (Lisa Stambaugh) petition to intervene on behalf of Erica. We found that Daniel and Erica had adverse interests in the award, and, because of that, Lisa should be allowed to intervene to protect Erica's interests.

The adversity between Daniel and Erica exists due to the fact that they have different mothers. Daniel's mother is Neal's ex-wife. Daniel lives with her. Erica's mother, Lisa, lived with Neal prior to his death. They were to be married, with Erica to live with them after her birth. As mentioned in the *Knobloch* case, it would have been impossible for Neal to live with both children.

After the appeal, the F.E.L.A. action was combined with a claim under the Wrongful Death Act of this State (Ill. Rev. Stat. 1979, ch. 70, par. 1 *et seq.*), and was eventually settled. The award was $165,000, to be distributed to Daniel and Erica. The trial court held a distribution hearing. In its order of January 2, 1985, the court awarded $100,000 to the guardian of Daniel's estate and $65,000 to the guardian of Erica's estate. Erica brings this appeal, claiming that the lower court erred in dividing the award 61:39 in favor of her half-brother.

The parties agree that the division of an award in either a wrongful death or F.E.L.A. claim is left to the trial judge's discretion. A reviewing court will disturb the division only when there has been an abuse of discretion. (*Mortensen v. Sullivan* (1972), 3 Ill. App. 3d 332, 278 N.E.2d 6.) Erica claims that the trial judge considered improper factors and acted arbitrarily in making the division.

The improper factors that the trial court is alleged to have considered were that Erica is illegitimate, was posthumously born, and is fe-

male. We note, after careful examination of the record and the trial judge's memorandum order that there is no evidence supporting such allegations. While consideration of an invidious basis in making the division would have been improper (see *Levy v. Louisiana*, 391 U.S. 68, 20 L. Ed. 2d 436, 88 S. Ct. 1509, and its progeny), there is nothing in the record supporting such an allegation. We find no substance to the claim and consider it baseless. We are aware that the trial court did have to consider the age of the children at the time of Neal's death in dividing the award. In that sense, Erica's being posthumous was implicitly considered. However, we see nothing to suggest that she was discriminated against because of it.

Our next analysis is whether the trial court's award is arbitrary and inequitable. We must determine this without the aid of any definite mathematical calculation or formula. "The [F.E.L.A. is silent as to the method of computing the share of each beneficiary." (*Padgett v. Padgett* (S.D. Fla. 1950), 88 F. Supp. 630, 633.) Likewise, under the Wrongful Death Act, calculation of the loss suffered is one that is not subject to mathematical determination. *Lambdin v. Walter* (1968), 91 Ill. App. 2d 273, 233 N.E.2d 435; *Eggimann v. Wise* (1964), 56 Ill. App. 2d 385, 206 N.E.2d 472.

Erica directs our attention to several cases from the State of New York for support of her proposition that the division of the award should be allocated on the basis of the remaining years of minority of the dependants. (*In re Shecora's Estate* (1960), 201 N.Y.S.2d 191; *In re Saxe's Estate* (1959), 21 Misc. 2d 811, 194 N.Y.S.2d 972; *In re Lachman's Estate* (1955), 208 Misc. 774, 147 N.Y.S.2d 769; *In re Von Schlichten's Estate* (1951), 201 Misc. 334, 108 N.Y.S.2d 42; *In re Sintyago's Estate* (1950), 198 Misc. 776, 100 N.Y.S.2d 556.) She further suggests that these cases are compelling because the Illinois Wrongful Death Act was modeled after the New York act. *Mortensen v. Sullivan* (1972), 3 Ill. App. 3d 332, 278 N.E.2d 6.

This line of New York cases show how those courts apply their statute. They resort to a mechanical computation involving the actuarial life remaining for the decedent and the remaining years of dependency of the dependents based thereon. There is, however, a line of authority from New York that states situations exist where the court will depart from the mathematical computation. *In re Kaiser's Estate* (1950), 198 Misc. 582, 100 N.Y.S.2d 218.

Erica cites no local authority mandating use of such a formulation. We will not state that a formula must be used. We do recognize, however, that it would help in showing any disparity in the award.

Our research, and that supplied by the parties, shows no cases

similar to the fact situation we presently face. Examination of the relevant factors regarding the division of the award leads us to the point where equitable interests favor both Daniel and Erica. We find it very difficult, as the trial court certainly must have, to quantify the factors presented.

Daniel was six years of age when his father was killed. He had known his father. He had received care, attention, instruction, training, advice, and guidance from Neal. Erica, on the other hand, would never have this opportunity. Had Neal lived, the evidence showed that he presumably would have married Erica's mother, and the three would have lived together. Thus, assuming Neal would not redivorce, Erica would have enjoyed the care, attention, etc., for the term of her minority. Daniel would not have had this opportunity. He was living with his mother, Neal's ex-wife. Daniel's contact with his father would not have been as constant as Erica's. Finally, at Neal's death, Daniel had 12 years to majority, while Erica was yet to be born.

This situation, where reasonable minds would differ, is one that calls out for judicial discretion on the part of the trial judge. This court will not alter the findings of the lower court for the sole reason that we disagree with them or would have rendered a somewhat different decision. The factors listed above have to be considered by the trial judge. Failure to do so would amount to an abuse of discretion. The trial judge, after quantifying the factors in his own manner, divided the award $100,000 for Daniel, $65,000 for Erica.

This court must also exercise discretion. We, too, must analyze the factors. We should decide, not whether we would have so divided the award, but whether the trial judge went beyond the outer limits of what is just. We find in this case that the division here, while approaching those outer limits, did not go beyond them. The division of the award does not amount to an abuse of discretion.

Therefore, the order of the circuit court of Peoria County is hereby affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.