*In re* ESTATE OF STEPHANIE M. WILLIAMS, Deceased.

Fifth District   No. 5—90—0835

Opinion filed January 13, 1992.

Janie F. Smith, of Wham & Wham Attorneys, of Centralia, for appellant.

R. Edward Veltman, Jr., and David M. Foreman, both of Crain, Cooksey, Veltman & Miller, Ltd., of Centralia, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Stephanie Williams was killed on September 15, 1988, when the motorcycle upon which she was riding as a passenger collided with a tree which had fallen across the roadway. Stephanie was 15 years old

at the time of the accident. She was survived by her father DeWayne Williams and her mother Anita Kratz.

DeWayne and Anita divorced in 1975, and DeWayne had custody of Stephanie until her death. DeWayne was appointed administrator of her estate, and a wrongful death action was instituted on her behalf. The claim was subsequently settled, with the estate receiving approximately $58,000. Out of the proceeds, Stephanie's two half-brothers and two half-sisters each received $1,000. In addition, the court awarded each of Stephanie's half-brothers $1,000 from their father's share of the proceeds; $5,064.80 was placed in escrow pending resolution of a claim made against the estate by St. Mary's Hospital; $6,558.12 was paid to DeWayne as reimbursement for funeral and other expenses; and $406 was paid to attorney John McGuire for his services as guardian *ad litem*. The balance of the proceeds were distributed to DeWayne and Anita as follows:

| LOSS OF SOCIETY | DeWayne | Anita |
|---|---|---|
| Love and Affection | $8,394.22 | $8,394.22 |
| Companionship, Guidance and Security | $20,987.21 | $4,195.43 |
| TOTAL | $29,381.43 | $12,589.65 |
| Approximate Percentage of Dependency | 70% | 30% |

Anita Kratz argues that the trial court abused its discretion in not making an equal distribution of the proceeds between DeWayne and herself. We affirm the decision of the trial court.

In order to offer insight into the trial court's reasoning, a substantial portion of its order is set forth below:

"The parents in this case shall take in such proportion as they were dependent upon the deceased (see Para. 2, Ch. 70, Illinois Revised Statutes).

\* \* \*

There is no presumption of equal pecuniary loss as between the parents and as the 15 year-old decedent did not and would not in the foreseeable future contribute financially to either parent the division will substantially turn on the parents' relative loss of companionship, guidance, security, love and affection.

(4) There is no guidance in the common law to the trial courts in how to weigh the intangible 'love and affection' as op-

posed to the only slightly more tangible 'companionship, guidance and security'. However, given the history of pecuniary injuries relative to the Wrongful Death Statute this court believes that the more tangible should be more heavily considered.

(5) The parents have been equally deprived of the 'love and affection' of Stephanie. Although mother saw the child much less frequently the relationship itself was plainly deep and meaningful. The absence of the child did not lessen the bond. There was no estrangement as the mother and daughter visited regularly, if not frequently.

Of the balance each parent should therefore take $8,394.22.

(6) The parents have not been equally deprived of the child's 'companionship, guidance and security'.

Although there is some suggestion in this record of fault, suggestions made by each parent as to the other, the court completely disregards such suggestions or inferences as having no relevance.

For this area of inquiry time actually spent with the child is relevant. Father shared the child's companionship on a day-to-day basis. The child was and for several years would continue to be a household member. It was he who had to deal with the daily details of this child's life since March 1976. He was the one that shared the subtle and meaningful experiences of the developing child's life on a constant basis. Mother was close, but father suffered a much greater loss of companionship and guidance.

The child was being raised in Marion County. Both father and mother have family in Marion County. Father lives here and can reasonably be expected to stay. Mother lives in northern Illinois and can reasonably be expect [sic] to stay. Even if Stephanie had left Marion County upon becoming an adult she would reasonably be expected to treat this area as her home and to return to it with greater frequency. Father's loss of companionship and guidance would continue to be proportionately greater.

For this element of their loss father shall take 20,987.21 and mother shall take 4,195.43.

(7) Any balance remaining after all payments set out above and after the resolution of the hospital claim shall be divided with father to receive 70 percent and mother to receive 30 percent.''

Under the divorce decree Anita was permitted visitation with Stephanie one weekend per month and whatever other arrangements could be made by the parents. Anita Kratz testified that she regularly exercised her once-a-month visitation during the first year after the divorce. In 1976 Anita moved to Lincoln, Illinois, which is approximately a two-hour drive from DeWayne's residence. During her 1½-year residency in Lincoln, Anita exercised visitation with Stephanie every month and a half. Anita remarried in 1977 and moved farther away from Stephanie. Anita visited her daughter approximately five or eight times that year. In 1978 Anita moved to Fox Lake, Illinois, which necessitated a six-hour drive to visit Stephanie. She estimated that she visited her five to nine times a year after her move to Fox Lake. Anita Kratz also testified that she asked DeWayne for visitation on Thanksgiving and Christmas, but he always refused. Anita presented evidence that she sent $1,000 to $1,400 to Stephanie each of the two years before her death. In the last five years of Stephanie's life, Anita spoke with Stephanie by telephone at least once a week.

Kimberly Kratz, Anita's stepdaughter, testified that Anita made many trips to visit with Stephanie. Kimberly observed that Anita and Stephanie had a very strong and loving mother-daughter relationship. A lifelong acquaintance of Anita's, William Parish, testified that Anita and Stephanie seemed to have a good time together and seemed to have affection for one another. He testified that they would "hug, embrace, like a mother-daughter would if she hadn't seen her for a while and she was glad to see her."

DeWayne Williams testified that Stephanie was "Daddy's girl." He taught her how to play racquetball and basketball and how to water-ski and swim. Stephanie went on many trips with DeWayne, his wife Cindy, and Stephanie's two half-brothers. They visited Disneyworld, took trips to Kentucky Lake, made numerous trips to Six Flags, and went on float trips on the Meramec River. The family attended church nearly every Sunday and also attended catechism classes together. DeWayne testified that after their divorce Anita only visited Stephanie two or three times a year. Stephanie visited with Anita for approximately two weeks during the summer before she died.

■ Parents are entitled to a presumption of pecuniary injury in the loss of a child's society. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) The parties agree that pecuniary injury encompasses loss of society or the deprivation of the companionship, guidance, comfort, love and affection of the deceased. (*Bullard*, 102 Ill. 2d 505, 468 N.E.2d 1228; *Drews v. Gobel Freight Lines, Inc.* (1990), 197

Ill. App. 3d 1049, 557 N.E.2d 303; *Gabriel v. Illinois Farmers Insurance Co.* (1988), 171 Ill. App. 3d 663, 525 N.E.2d 864.) Anita Kratz contends, however, that because there was no estrangement between Stephanie and herself, the proceeds should be equally split between DeWayne and herself.

■ Under the Wrongful Death Act, the court is to apportion the settlement according to "the percentage of dependency" of the next of kin of the decedent. (Ill. Rev. Stat. 1989, ch. 70, par. 2.) The division of the award is left to the discretion of the trial court. (*Adams v. Turner* (1990), 198 Ill. App. 3d 353, 356, 555 N.E.2d 1040, 1042.) Calculation of the loss suffered is one that is not subject to mathematical determination. *Adams*, 198 Ill. App. 3d at 358, 555 N.E.2d at 1043, citing *In re Estate of Flake* (1985), 137 Ill. App. 3d 535, 537, 484 N.E.2d 1243, 1245.

■ In the instant case, the trial court considered the past relationship between Stephanie and her father in support of its findings on the future relationship between Stephanie and her parents. There was no evidence presented as to Stephanie's future plans or goals. Based on the record it is not unreasonable that the noncustodial parent received less than the custodial parent (see *Mortensen v. Sullivan* (1972), 3 Ill. App. 3d 332, 278 N.E.2d 6), and we cannot find that the division of the award amounts to an abuse of discretion.

Anita also argues that because the trial court found that the parties' love and affection were equal, it could not logically find that their loss of companionship, guidance and security was disproportionate. We disagree.

There is no mathematical calculation or formula for determining the division of an award. (*In re Estate of Flake* (1985), 137 Ill. App. 3d 535, 484 N.E.2d 1243.) The trial court in this case gave no weight to the suggestion that either parent was at fault. The court did, however, place relevance on the time actually spent with Stephanie. The court acknowledged that DeWayne shared Stephanie's companionship on a daily basis; Stephanie was a member of his household, and it was DeWayne who dealt with the daily details of her life. Based on the record, we cannot find that the trial court's determination is against the manifest weight of the evidence.

For the foregoing reasons, the decision of the circuit court is affirmed.

Affirmed.

GOLDENHERSH, P.J., and LEWIS, J., concur.