*In re* ESTATE OF WILLIAM MATTHEW GLENN, a Minor (Mary Ann Glenn, Guardian, Appellee (Mary Ann Glenn, Adm'x of the Estate of William Elvis Glenn, Jr., Deceased, Plaintiff-Appellee, v. Herschel Johnson, Defendant and Third-Party Intervenor-Appellant (Herschel Johnson Real Estate and Development Corporation *et al.*, Defendants))).

Fifth District No. 5—00—0039

Opinion filed March 7, 2001.

Thomas A. LeChien, of LeChien & LeChien, Ltd., of Belleville, for appellant Herschel Johnson.

Alvin C. Paulson and Garrett P. Hoerner, both of Becker, Paulson & Hoerner, P.C., of Belleville, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

Herschel Johnson appeals from the trial court's December 22, 1999, and December 29, 1999, orders regarding the distribution of the wrongful-death settlement that the appellees made with John Deere Company (John Deere).

In November 1996, William E. Glenn, Jr., was killed while excavating a crawlspace for a new O'Fallon, Illinois, home, when the John Deere tractor he was operating rolled over. As it was apparently unclear whether Herschel Johnson was his employer, Mary Ann Glenn, William E. Glenn, Jr.'s wife and the administrator of his estate, filed a lawsuit against Herschel Johnson and others and alleged an independent contractor relationship, and she also filed a workers' compensation claim against Herschel Johnson and alleged an employment relationship. Ultimately, within the context of the workers' compensation claim, Herschel Johnson admitted that he was William E. Glenn, Jr.'s employer, and Mary Ann Glenn dismissed the lawsuit against him.

The lawsuit against Herschel Johnson Real Estate and Development Corporation continued, ultimately resolving in a $25,000 settlement, against which Herschel Johnson promised not to assert his workers' compensation lien.

The case continued, and eventually John Deere settled the suit for $225,000. At the hearing on this wrongful-death settlement, the probate court cases and the lawsuit were consolidated, Mary Ann Glenn was appointed the guardian of the person and estate of William Matthew Glenn, her minor son, and Herschel Johnson reentered the case by intervention. Herschel Johnson intervened to protect and assert his workers' compensation lien, which at that time totaled $51,000.

Mary Ann Glenn never filed her own claims against any of the

defendants for her loss of consortium. On December 22, 1999, there was no loss-of-consortium claim on file.

On December 22, 1999, the trial court determined that the gross settlement subject to the workers' compensation lien was $225,000. From that amount, the trial court calculated the attorney's fee of $74,992.50 and subtracted it from the gross settlement. The trial court also subtracted all applicable costs and expenses, which totaled $24,776.68. After these subtractions, there was a net recovery of $125,230.82. Comparing the $51,000 workers' compensation lien to the net recovery, the trial court determined that the lien represented 40.7% of the total net recovery. Applying that percentage to the expenses, the trial court concluded that Herschel Johnson was responsible for $10,084.15 of the total costs. Additionally, the trial court required Herschel Johnson to pay the statutory 25% attorney fee on his lien, for a total of $12,750. Subtracting the $10,084.15 and $12,750 from the $51,000 lien left a net amount due to Herschel Johnson of $28,165.85. Subtracting the attorney fees, the costs, and the net workers' compensation lien left $84,314.97 to be allocated to Mary Ann Glenn and her minor son.

The trial court then turned to the issue of Mary Ann Glenn's loss of consortium and stated that it would make an allocation between the loss of consortium and all other losses. In determining that 50% of the $84,314.97 net recovery should be allocated to the loss of consortium, the trial court stated that it considered the facts, testimony, and case law.

The other half of the net recovery ($42,157.49) was then utilized to determine Herschel Johnson's credit for future workers' compensation payments. Because of the settlement, the employer, Herschel Johnson, is entitled to a moratorium on his weekly payments to Mary Ann Glenn. Herschel Johnson's weekly workers' compensation obligation is $287.89. Taking that weekly amount into the net recovery utilized to determine the credit for future workers' compensation payments ($42,157.49), the trial court arrived at a figure of 146.44 weeks as the moratorium on future workers' compensation payments. During the moratorium, the employer must still pay Mary Ann Glenn 25% of the original weekly amount ($71.97), representing the attorney fees. After the moratorium, the employer must resume the weekly payments of $287.89.

From the trial court's order, it appears that the attorney representing the estate, the minor child, and Mary Ann Glenn decided to forego the attorney's fee for the workers' compensation lien recovery ($12,750). Adding that amount to the $84,314.97 net settlement and to the $25,000 earlier settlement to which the workers' compensation

lien did not attach, the trial court concluded that there was a total of $122,064.97 to be distributed to Mary Ann Glenn and her minor son. After a consideration of the evidence and the report of the guardian *ad litem*, the trial court found that $100,000 should be distributed to Mary Ann Glenn, and the balance was to be placed in a restricted account on behalf of her minor son. The trial court's order concluded that the settlement was just and proper and in the best interests of the parties.

The identical order was also file-stamped on December 29, 1999.

■ The division of wrongful-death settlement proceeds is strictly within the trial court's discretion. *In re Estate of Flake*, 137 Ill. App. 3d 535, 536, 484 N.E.2d 1243, 1244 (1985); *Adams v. Turner*, 198 Ill. App. 3d 353, 356, 555 N.E.2d 1040, 1042 (1990). On appeal, we must decide whether the trial court abused its discretion in apportioning the wrongful-death settlement proceeds. *Adams*, 198 Ill. App. 3d at 356, 555 N.E.2d at 1042. "In determining whether a circuit court has abused its discretion, the issue is not whether the reviewing court agrees with the circuit court, but whether the circuit court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *Adams*, 198 Ill. App. 3d at 356, 555 N.E.2d at 1042.

We initially address a recent supreme court opinion, *In re Estate of Dierkes*, 191 Ill. 2d 326, 730 N.E.2d 1101 (2000), a case remarkably similar to this one. Herman Dierkes was fatally injured while on the job for the Department of Transportation. *Dierkes*, 191 Ill. 2d at 329, 730 N.E.2d at 1102. The injury occurred as a result of acts of a third-party tortfeasor. *Dierkes*, 191 Ill. 2d at 329, 730 N.E.2d at 1102. The decedent's wife retained a law firm to pursue all claims against the third party, for which she agreed to pay the firm one-third of any amount recovered. *Dierkes*, 191 Ill. 2d at 329, 730 N.E.2d at 1102. The estate settled its claim against the third party for $100,000. *Dierkes*, 191 Ill. 2d at 329, 730 N.E.2d at 1102. Additionally, the employer and the estate reached a settlement on the workers' compensation claim, by which the employer would pay the decedent's widow $2,176.11 per month for 20 years. *Dierkes*, 191 Ill. 2d at 329, 730 N.E.2d at 1103. At that time, the present value of that compensation exceeded $100,000. *Dierkes*, 191 Ill. 2d at 329, 730 N.E.2d at 1103. The decedent's widow thereafter petitioned the court to approve the settlement and distribution thereof. *Dierkes*, 191 Ill. 2d at 329, 730 N.E.2d at 1103. The attorneys would receive one-third of the $100,000 ($33,333.33), based upon the contingency-fee contract. *Dierkes*, 191 Ill. 2d at 329, 730 N.E.2d at 1103. Because the workers' compensation lien far exceeded

the third-party settlement, the balance of the settlement ($66,666.67) was proposed to go back to the employer, subject to the statutory 25% attorney fee ($16,666.67). *Dierkes*, 191 Ill. 2d at 329-30, 730 N.E.2d at 1103. After adding that statutory attorney fee to the attorney's contractual fee, the attorneys received half of the $100,000 settlement, and the employer received the other half. *Dierkes*, 191 Ill. 2d at 329-30, 730 N.E.2d at 1103. The circuit court approved the settlement and its distribution, and the appellate court affirmed. *Dierkes*, 191 Ill. 2d at 330, 730 N.E.2d at 1103.

According to the supreme court's interpretation of statutory law, *Dierkes* did not create new law. But its application will change the attorney fee structure on third-party settlements in cases with workers' compensation liens, throughout the state, as the previous statutory interpretation of the appellate courts allowed for a different result.

■ Specifically, *Dierkes* held that in cases where the workers' compensation lien exceeds the amount of the third-party settlement, the employer will be reimbursed the full amount of the third-party settlement less fees and costs. *Dierkes*, 191 Ill. 2d at 333, 730 N.E.2d at 1105. In other words, despite an attorney-client contract calling for a one-third fee, the attorney is limited to a 25% fee on the third-party settlement in those cases where the lien exceeds the settlement. *Dierkes*, 191 Ill. 2d at 333, 730 N.E.2d at 1104-05. If the attorney wants to recover the remaining 8⅓% of the contractual fee, he or she must obtain it directly from the client. *Dierkes*, 191 Ill. 2d at 335, 730 N.E.2d at 1106.

Applying *Dierkes* to this case, if the employer's workers' compensation lien exceeded the third-party settlement upon which the lien could attach ($225,000), then the only attorney fee that would automatically attach to the settlement proceeds is the statutory 25% fee collectible from the employer, or $56,250. However, in this case, the only workers' compensation lien proven up at the hearing on the wrongful-death settlement was $51,000, representing the amount paid out to that point by the employer. In his reply brief, the employer indicates that, as in *Dierkes*, the workers' compensation lien exceeds the amount of the third-party settlement. While that statement may or may not be true, we do not make findings of fact in the appellate court. Accordingly, we must examine the facts introduced into evidence relative to the lien.

■ We do not read *Dierkes* as precluding an attorney from recovering his or her one-third contractual fee on a third-party settlement to which a workers' compensation lien is attached. Rather, we conclude that so long as the amount of the third-party settlement is sufficient to cover both the workers' compensation lien and the one-third at-

torney fee, then the attorney is entitled to the full amount of his or her contract. The *Dierkes* court stated that if the 25% attorney fee does not fully satisfy the amount owed the attorney pursuant to the attorney-client contract, then the balance must come from the employee, as " '[t]he employer cannot be expected to pay more than the statutorily required amount.' " *Dierkes*, 191 Ill. 2d at 335, 730 N.E.2d at 1106, quoting *Mounce v. Tri-State Motor Transit Co.*, 150 Ill. App. 3d 806, 811, 502 N.E.2d 53, 57 (1986). Logically, the employer will not be required to pay more than the 25% share of the amount of the lien to be reimbursed in cases where the third-party settlement is sufficient to cover both the full amount of the lien and the one-third attorney fee based upon the attorney-client contract.

We also conclude that an attorney should not be allowed to recover both a one-third attorney fee on the full amount of the third-party settlement and the statutory 25% fee on that portion of the third-party settlement constituting the workers' compensation lien reimbursement. As *Dierkes* made clear that there can only be one attorney fee, the one-third fee is the maximum that an attorney can recover in this particular situation. *Dierkes*, 191 Ill. 2d at 336, 730 N.E.2d at 1106; see also *Reno v. Maryland Casualty Co.*, 27 Ill. 2d 245, 248-49, 188 N.E.2d 657, 658-59 (1962). The employer must still pay his 25% of the amount of the workers' compensation lien recovered. That dollar amount is the employer's contribution to the overall fee that the attorney is entitled to collect.

■ In this case, the settlement to which the lien attached is $225,000. The one-third attorney fee is $75,000. The workers' compensation lien is $51,000. The applicable 25% attorney fee on the $51,000 lien is $12,750. Of that $75,000 attorney fee, $12,750 will come from the employer Herschel Johnson, while the remaining $62,250 will come from the plaintiff.

■ Herschel Johnson also contends that the trial court erred in determining his proportionate amount of his costs associated with his recovery of the workers' compensation lien. We agree.

The total settlement to which the workers' compensation lien attached was $225,000. The trial court initially subtracted the one-third attorney fee ($74,992.50), and then it subtracted the amount of the costs ($24,776.68), to arrive at a net settlement recovery amount of $125,230.82. The trial court then determined what percentage the workers' compensation lien was of the net settlement recovery ($51,000 divided by $125,230.82). The court concluded that Herschel Johnson was required to pay 40.7% of the expenses, or $10,084.15.

This calculation bears no proportionality to the facts of the case. The proper calculation divides the workers' compensation lien

($51,000) by the total settlement at issue ($225,000). That is the only way to determine what proportion the lien bears to the total applicable settlement. With that calculation, Herschel Johnson should only be required to pay 23% of the expenses, or $5,698.64.

■ Herschel Johnson next argues that the trial court improperly approved the wrongful-death settlement. Specifically, he argues that the trial court should not have approved the allocation of 50% of the net settlement recovery to the loss of consortium with the other 50% going toward all other losses. Herschel Johnson argues that Mary Ann Glenn is not entitled to any loss-of-consortium damages because she never filed a separate claim seeking such damages and the statute of limitations for such a claim had expired at the time of the settlement.

In addition to the briefs presented by the parties to this appeal, we also reviewed the pleadings filed in the trial court, as well as the transcript of the hearing on the wrongful-death settlement. From the pleadings, it is clear that Mary Ann Glenn asserted a loss-of-consortium claim. The claim was far from perfect in that it was mixed in with the wrongful-death claim and would probably not have withstood a motion relative to the argument that each cause of action should be "separately designated and numbered" as required by section 2—613(a) of the Code of Civil Procedure (735 ILCS 5/2—613(a) (West 1998)). Nevertheless, the cause of action was pled. And no defendant sought to have that claim dismissed. Therefore, at the time of settlement, John Deere sought to settle all claims pending—including Mary Ann Glenn's loss-of-consortium claim.[1] Apparently based upon the settlement between Mary Ann Glenn, in both her personal and administrative capacities, and John Deere, the trial court entered an order approving the allocation of 50% of the net settlement proceeds to Mary Ann Glenn's loss-of-consortium claim.

■ Herschel Johnson contends that, despite the trial court's allocation, his workers' compensation lien should be allowed to attach to the entirety of this settlement. Section 5(b) of the Workers' Compensation Act sets forth the lien at issue in this case, stating, "[F]rom the amount received by the *** personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him

---

[1]We believe that at the time of the settlement, despite the fact that the statute of limitations had expired as to the loss-of-consortium claim, Mary Ann Glenn would have been allowed to formally amend her complaint in order to separate the counts. Such an amendment would undoubtedly have related back to the filing of the original complaint, thus avoiding the peril of the statute of limitations, because the amendment would simply have been one of form and not of substance.

to such *** personal representative ***.'' 820 ILCS 305/5(b) (West 1998).

There is no dispute that a workers' compensation lien cannot attach to loss-of-consortium damages. *Page v. Hibbard*, 119 Ill. 2d 41, 47-48, 518 N.E.2d 69, 71-72 (1987). Herschel Johnson argues that his lien can attach to that portion of the net settlement designated as loss-of-consortium damages because Mary Ann Glenn's claim was not separately filed. We have already dispensed with this argument. Herschel Johnson insists that the case of *Schrock v. Shoemaker*, 159 Ill. 2d 533, 640 N.E.2d 937 (1994), requires a distinctly separate claim. We will briefly address this argument. In *Schrock v. Shoemaker*, the widow filed her own direct claim as authorized by the Structural Work Act (740 ILCS 150/9 (West 1992)). *Schrock*, 159 Ill. 2d at 535, 640 N.E.2d at 938. The *Schrock* supreme court decision does not mandate a separate claim. The widow filed a separate claim, so the issue of whether she was required to do so was not before the court. While the supreme court indicated that the workers' compensation lien could not attach to a claim filed by the widow individually (*Schrock*, 159 Ill. 2d at 539, 640 N.E.2d at 940), counsel for Herschel Johnson simply reads too much into the court's analysis in that case.

■ Herschel Johnson also argues that the trial court does not have the authority to divide up a wrongful-death settlement. He maintains that the court's power is simply to approve or disapprove the settlement proposed. We disagree with this position. The trial court must necessarily retain the power to apportion a wrongful-death settlement, because not all situations before the court are without contention. See *Adams*, 198 Ill. App. 3d at 356, 555 N.E.2d at 1042. Furthermore, the Wrongful Death Act specifically states, ''The trial judge shall calculate the amount of damages to be awarded each beneficiary ***.'' 740 ILCS 180/2 (West Supp. 1999). Calculating damages requires the trial court to do more than merely approve or disapprove the settlement.

■ Because of the errors we found in the trial court's calculation of attorney fees and costs, the net recovery subject to apportionment is $92,671.96, rather than $84,314.97. The trial court's apportionment toward loss of consortium was 50%. In addition to the loss of support, a loss-of-consortium claim relative to a marital relationship involves the loss of society, which includes companionship and sexual intercourse. *Johnson v. May*, 223 Ill. App. 3d 477, 489, 585 N.E.2d 224, 232 (1992). The passing of William E. Glenn was a tremendous loss to his wife and minor child. Given the relatively small amount of money at issue and the immense loss, we conclude that the trial court did not act arbitrarily without employing conscientious judgment in apportioning 50% of the net settlement proceeds to Mary Ann Glenn for her

loss-of-consortium claim. Furthermore, counsel's recommendations to the court as to apportionment and the loss-of-consortium claim were well within reason given the loss sustained.

Herschel Johnson also argues that the trial court erred in allocating 50% of the net settlement to the loss of consortium because it allowed Mary Ann Glenn to receive a double recovery. The double recovery at issue involves the loss of support. Herschel Johnson correctly argues that a loss of consortium can include the loss of support. However, as indicated earlier in this opinion, the loss of support is one part of what makes up a loss-of-consortium claim. Mary Ann Glenn was entitled to be compensated for the loss of companionship and the loss of society relative to William E. Glenn's death, and the dollar amount at issue does not even come close to compensating her for her losses. We find no double recovery.

■ Herschel Johnson also takes issue with the fact that the trial court did not conduct a formal evidentiary hearing as contemplated by the Wrongful Death Act (740 ILCS 180/2 (West Supp. 1999)). Upon our review of the transcript of the hearing, we agree that no testimony was taken. We find that if this constitutes an error on the part of the trial court, then it is an error the employer lacks standing to contest. The persons who are entitled to the statutory hearing are the heirs of the decedent. Herschel Johnson is not an heir. As the employer, he has standing to take issue with whether a loss-of-consortium claim should be allowed. He made this argument. But we cannot allow an employer to make an argument on behalf of noncomplaining heirs.

■ Herschel Johnson next argues that the trial court erred in calculating the number of weeks of moratorium to which he is entitled. Because the costs and fees were improperly calculated, the moratorium was also improperly calculated. The total settlement at issue is $225,000. From that amount, the $75,000 attorney fee must be subtracted. We also subtract the costs of $24,776.68. Finally, we subtract Herschel Johnson's net lien recovery of $32,551.36. With those subtractions, there remains a $92,671.96 net recovery. Fifty percent of that amount, or $46,335.98, is allocated toward Mary Ann Glenn's loss of consortium. Dividing the workers' compensation allocation of $46,335.98 by the weekly payment of $287.89 yields a moratorium of 160.95 weeks.

During those 160.95 weeks, Herschel Johnson must continue to pay Mary Ann Glenn 25% of the original weekly amount ($71.97), representing the attorney fees. After the passage of 160.95 weeks, Herschel Johnson must then resume the $287.89 weekly payments.

■ Turning to the trial court's distribution of the net settlement proceeds, we modify that distribution only with respect to the amount

allocated to Mary Ann Glenn. To the $92,671.96 that represents the net settlement, we add the previous $25,000 settlement, for a total of $117,671.96. Given the trial court's determination, based in part upon the guardian *ad litem*'s report that the minor child should receive $22,064.97, we conclude that this same amount should be distributed to the minor child and shall be held in a restricted account pursuant to sections 24—21 and 28—10(e) of the Probate Act of 1975 (755 ILCS 5/24—21, 28—10(e) (West 1998)) until he reaches the age of majority. The balance of $95,606.99 shall be distributed to Mary Ann Glenn.

Based upon the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County with respect to the approval of the wrongful-death settlement, but pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), we exercise our authority to modify that judgment relative to the settlement's distribution, as indicated in this opinion.

Affirmed as modified.

CHAPMAN, P.J., and HOPKINS, J., concur.